# Phelps's Appeal.

1. The holder of an incumbrance upon several tracts of land, cannot be controlled as to the order in which the several tracts subject to his lien shall be sold under his execution, in any other manner than that provided by the act of April 22d 1856, § 9, Pamph. L. 534. The remedy afforded by said act to the owners of the several tracts is exclusive, and completely superseded any course of proceeding in equity, previously pursued in such cases.

2. Arna's Appeal, 15 P. F. Smith 27, approved and followed, Roddy's Appeal, 22 P. F. Smith 98, distinguished.

3. Petitions for relief under the said act must comply strictly with all the requirements thereof. They must, therefore, distinctly admit that the petitioner's property is subject to the lien of the incumbrance in question.

4. The provisions of the said act are not unconstitutional as applied to all proceedings after its passage, even though the rights which it is sought to enforce in said proceedings accrued prior to said passage. The act merely modified an existing remedy and did not take away rights of property.

October 14th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

CERTRORARI to and appeal from the Court of Common Pleas No. 1, of *Allegheny county :* Of October and November Term 1881, No. 187.

This was an appeal by Thomas H. Phelps from an order of the said court directing the sheriff to sell certain lands, taken in execution under a writ of levari facias, in separate lots and in a specified order.

The material facts of the case were as follows : Abraham Horback, Jr., conveyed a tract of land, subject to the lien of a recognizance in partition, to Henry Reis, who executed to Horbach a mortgage to secure the purchase-money including the amount of said recognizance in partition, dated March 31st 1851, duly recorded.

Henry Reis subsequently divided this land into seven large

lots, which he sold to purchasers subject to the said mortgage in the following order :

| | | | Lot | |
|---|---|---|---|---|
| 1851, | April | 1, | Lot | E. |
| " | " | 1, | " | F. |
| " | " | 11, | " | A. |
| " | " | 12, | " | B. |
| " | " | 30, | " | G. |
| " | May | 12, | " | D. |
| 1854, | Aug. | 10, | " | C. |

Some of the said lots were subdivided into smaller lots and sold to other parties, and several of the lots were sold at sheriff's sales under judgments obtained against the terre-tenants.

The above mentioned mortgage given by Rice to Horbach was subsequently assigned to Thomas H. Phelps, and the interest and principal thereof being in default, for more than a year and a day, the said Phelps, in 1881, issued a scire facias thereon against Henry Reis, the mortgagor, obtained judgment thereon, and issued a levari facias, under which the entire mortgaged property was advertised for sheriff's sale on Monday June 6th 1881, but was adjourned until June 10th. On June 8th, Henry B. Stotler et al., owners of parts of lots A, B, D, E and G, presented petitions to the court, setting forth their respective titles, averring that by virtue of certain conveyances, mortgages and judicial sales, the lien of said mortgage had been discharged or postponed as to the several lots owned by the petitioners, and praying for an order restraining the sheriff from selling any of the petitioners' property, until lots C and D shall have been sold and their value exhausted in payment of the mortgage ; and in case it shall be necessary to sell any of the property owned by the petitioners, that the same shall be sold in separate lots and in the inverse order in which they were sold and conveyed by the said Henry Reis.

The petitioners did not expressly admit that the lots owned by them respectively remained subject to the lien of the said mortgage; on the contrary, certain of the petitioners claimed that their lots had been discharged from the lien of the said mortgage by virtue of the judicial and other sales above referred to. None of the petitioners averred that the amount of the plaintiff's judgment had been tendered to him or that he had been requested to assign his judgment in the mode provided by the ninth section of the Act of April 22d 1856 (Purd. Dig. 827, pl. 40).

Thomas H. Phelps filed an answer to the said petitions, denying the rights claimed by the petitioners. The owners of lots C and D were not made parties to the proceedings.

[Phelps's Appeal.]

· The court, after argument, entered the following order:

"And now, this 8th day of June 1881, the petition of Henry B. Stotler et al., being presented in open court, the said court, in compliance with the prayer therein contained, hereby order and direct the said plaintiff and Thomas H. Hunter, sheriff, to offer and sell the land in separate lots or divisions according to the Reis plan thereof, and in the following order:

|       |       |             |         |         |
|-------|-------|-------------|---------|---------|
| 1st.  | Lot   | C           | of said | plan.   |
| 2d.   | Lot   | D           | "       | "       |
| 3d.   | Lot   | G           | "       | "       |
| 4th.  | Lot   | B           | "       | "       |
| 5th.  | Lot   | A           | "       | "       |
| 6th.  | Lots  | E and F     | "       | "       |

"And not to offer or sell any succeeding lot in said list or any part thereof until the proceeds of the lot or lots directed to be sold earlier prove insufficient to satisfy the claim under said Reis mortgage. Provided that this order shall not affect the right of plaintiff to sell any property included within his levy not owned by petitioners here represented, in such order as he may deem proper."

Thomas H. Phelps thereupon took this appeal, assigning for error the said order of the court.

*George W. Guthrie* (with him *F. M. Magee*), for the appellant.—Since the passage of the Act of April 22d 1856, the mode therein provided, whereby execution may be enforced of several lots of land, subject to a common incumbrance and aliened at successive dates, is exclusive: Arna's Appeal, 15 P. F. Smith 72; Roddy's Appeal, 22 P. F. Smith 98; Act of March 21st 1806, § 13, Purd. Dig. 58, pl. 5. But this Act was not followed in this case. The plaintiff was not given the option of accepting his money and assigning his claim. The petitioners do not bring themselves within the terms of the Act by admitting the plaintiff's lien; on the contrary, they deny the existence of the lien as to certain of the lots. It is argued that the order of the court as made will not injure the plaintiff, as it merely prescribes an order of sale and does not exempt any part of the mortgaged property. This does not follow. Lots C and D, directed to be first sold, happen to be the very two lots, the owners of which have an ostensible defence; if the plaintiff, fearing to risk the title, lets them go at sheriff's sale at a nominal price, he may find when the last lots are sold that the fund is insufficient to satisfy his debt. The equity of the petitioners, whatever it may be, is an equity between themselves, and it is inequitable to throw upon the plaintiff the responsibility of passing upon the different defences raised by the several owners. It is argued that the terre-tenants have had no day in court, but

they should have applied to have our judgment against the mortgagor opened to let them into a defence.

*J. F. Slagle* and *William P. Elliott* (with them *Hampton* and *Dalzell*), for the defendants in error.—The successive conveyances, out of which the equities spring, were all made prior to the passage of the Act of 1856. Upon each conveyance for a full consideration, the purchaser acquired a fixed right to have the properties still remaining in the mortgagor's hands primarily liable for the whole of the mortgage debt. Hence the rule, that the purchasers of several lots subject to a common incumbrance are chargeable in the order inverse to the date of their several titles. The Act of 1856 cannot therefore operate retrospectively to modify or take away the purchasers' rights. Therefore, the order of the court below was properly made in accordance with the established rule : Amanda Martin's Appeal, 1 Out. 85 ; Mevey's Appeal, 4 Barr 80 ; Taylor *v.* Mitchell, 7 P. F. Smith 211 ; Neff's Appeal, 9 Harris 247; Becker's Appeal, 3 Casey 55 ; Seamans *v.* Carter, 15 Wis. 548 ; Cowden's Estate, 1 Barr 277, overruling Presbyterian Church *v.* Wallace, 3 Rawle 165 ; Nailer *v.* Stanley, 10 S. & R. 456 ; Carpenter *v.* Koons, 8 Harris 226 ; Clowes *v.* Dickenson, 5 John. Ch. 235 ; Dash *v.* Van Kleeck, 7 John. 505 ; Sedgwick on the Construction of Statutes 161 ; Dwarris on Statutes, 162. In Arna's Appeal, supra, and Roddy's Appeal, supra, the rights accrued after the Act of April 22d 1856, was in force. In Arna's Appeal, there was a judgment against the terre-tenants ; here the plaintiff did not make the terre-tenants parties to the sci. fa., but seeks, under a judgment against the mortgagor, to throw on them, without their having a day in court, the burden of defending their titles against the purchasers at sheriff's sale. The plaintiff's only right is to get his money ; and that right is not affected by the order in which the properties may be sold in execution.

Chief Justice Sharswood delivered the opinion of the court, October 24th 1881.

In Arna's Appeal, 15 P. F. Smith 72, the question was on a motion to quash the appeal, which was not by the plaintiff in the execution but by the terre-tenant whose land the court below had ordered to be first sold. The plaintiff below was permitted to intervene and make the motion to quash, offering to accept his debt and assign his judgment to either of the terre-tenants. The point here made was directly raised, and this court held that the ninth section of the act of April 22d 1856, Pamph. L. 534, entirely superseded any course of proceeding in equity which had been pursued before. It is not easy to see how the decision could have been otherwise. Not only would it be in

[Phelps's Appeal.]

the teeth of the act of March 21st 1806, § 13, 4 Smith's Laws, 332, which provides that where a remedy is given or any thing directed to be done by an Act of Assembly, the directions of the act shall be strictly followed, but it is abundantly evident that to sustain the old proceeding, without regard to the limitation or qualification contained in the act of 1856, would be practically to repeal the act in toto. The legislature has seen fit to enact, in order to secure the rights of the judgment creditor and to prevent any delay or embarrassment to him, that he shall have the option offered to him of accepting his debt and assigning his judgment before he can be controlled in the order in which the different tracts of land subject to his lien shall be sold under his execution. It is not for us to question the mandate of the legislature, even if we thought it unjust or oppressive to the terre-tenant. The authority of Arna's Appeal is not in the least shaken by Roddy's Appeal, 22 P. F. Smith 95. The order in that case simply discharged the rule. It seems the attention of the court below had not been called to the Act of 1856, and it was said in the opinion of the court: "As the court below declined to exercise their power at all or to make any order in the case, their order discharging the rule must be reversed." The case was therefore remanded to be reheard and decided according to the Act of 1856.

It is proper to remark that the petitions upon which the order was made in this case are all fatally defective in not distinctly averring that the plaintiff's judgment or the mortgage upon which it is founded is a lien on their lands. Indeed, some of the petitioners expressly reserve the right to contest that point. But the words of the Act confine the remedy to the real estate of persons which is subject to a common lien. Without such lien, the petitioners had no equity to interpose and arrest the proceeding of the plaintiff to recover his debt. In that case no harm can be done to them. Their title will not be disturbed or affected by the sale, and it is open to them in an ejectment by the sheriff's vendee to contest his title.

We see no ground to question the constitutionality of the Act of 1856, in its application to all proceedings, after its passage. It is a modification of an existing remedy and in no way infringes any clause in the federal or state constitution.

                 Order reversed and record remitted.

Mr. Justice MERCUR dissents from the construction given to the Act of 1856, but concurs in the judgment on the other ground.