JOHN MAZZUCHELLI, SR., PLAINTIFF-APPELLANT, v. BERT SILBERBERG AND JAMES NITOLLI, DEFENDANTS-RESPONDENTS.

Argued November 17, 1958—Decided January 19, 1959.

16

*Mr. Edward S. Miller* and *Mr. Fowler V. Harper,* of the Connecticut Bar, argued the cause for appellant (*Mr. Emanuel M. Sultan* and *Messrs. Steisel, Gundersdorf & Wolf,* attorneys; *Mr. Fowler V. Harper, pro hac vice* and *Mr. Aaron Dines,* of counsel and on the brief).

*Mr. Gerald F. O'Mara* argued the cause for respondent Bert Silberberg (*Messrs. O'Mara, Schumann, Davis & Lynch,* attorneys; *Mr. Gerald F. O'Mara,* of counsel).

*Mr. Andrew V. Clark* argued the cause for respondent James Nitolli.

The opinion of the court was delivered by

WEINTRAUB, C. J.   Plaintiff sued to recover for personal injuries sustained in a collision between cars operated by defendants Silberberg and Nitolli.   He was a passenger in the Silberberg car.   The trial judge ordered a judgment of involuntary dismissal as to Silberberg on the ground that plaintiff's exclusive remedy against him was under the Workmen's Compensation Act, and the correctness of that action is the sole issue on the appeal from the judgment for Silberberg.   The jury found for Nitolli, and in appealing from the judgment plaintiff asserts it was error to admit evidence that he had obtained workmen's compensation as the result of the accident.

We certified the cause on our own motion before consideration of it by the Appellate Division.

I.

Silberberg and his wife, as partners, operated a package liquor store in Union City under the trade name of Summit Wine & Liquor Store.   They also acquired a tavern and package liquor store in Newark which they operated under the trade name Public Service Wine & Liquor Store, ap-

parently the name used by their vendor. Plaintiff was employed at the Union City store at which Mrs. Silberberg devoted her time. Silberberg's practice was to tend the Newark store during the day and to leave at about 5:30 P. M. for the Union City store where he worked until the closing hour. It was part of plaintiff's duty, as an employee of the partnership, to drive Silberberg to Newark in the morning and from Newark to the Union City store at the hour just indicated. Plaintiff's day usually ended upon conclusion of the return trip.

On the day in question, plaintiff came to Newark to pick up Silberberg in accordance with the established pattern. Silberberg took the wheel for the return trip. The accident occurred while the parties were still in Newark.

Plaintiff does not quarrel with the finding that he was injured by an accident arising out of and in the course of his employment. Indeed he had successfully pressed a compensation claim against Silberberg and his wife, trading under the Summit name. He contends, however, (1) that a partner is a third person within the meaning of the provision of the compensation act preserving the common law claim of an employee against third persons, *R. S.* 34:15-40, and (2) alternatively, that Silberberg was not acting in furtherance of the business of the employing partnership and hence should be liable at law.

To sustain the first proposition it must be found that the partnership is a jural entity distinct from the partners and is the sole employer within the meaning of the Compensation Act. Plaintiff appreciates that *Parker v. Zanghi,* 45 *N. J. Super.* 167 (*App. Div.* 1957), is against him. He asks that we disapprove that case and follow Minnesota decisions which hold a partner liable at law. *Gleason v. Sing,* 210 *Minn.* 253, 297 *N. W.* 720 (*Sup. Ct.* 1941); *Monson v. Arcand,* 244 *Minn.* 440, 70 *N. W. 2d* 364 (*Sup. Ct.* 1955).

The Uniform Partnership Law, adopted in this State in 1919, did not embrace the so-called "entity" theory. *Lewis, "The Uniform Partnership Act,"* 29 *Harv. L. Rev.* 158, 291

(1915); *Mechem, Partnership* (*2d ed.* 1920), § 6, *p.* 11. An early draft by Dean Ames for the commissioners was based on the entity theory and accordingly defined a partnership as "a legal person formed by the association of two or more individuals for the purpose of carrying on a business with a view to profits." *Crane, Partnership* (*2d ed.* 1952), § 3, *p.* 18, *n.* 31. Dean Lewis, however, advocated the view "that with certain modifications the aggregate or common law theory should be adopted." The history appears in the Commissioners' prefatory note, 7 *U. L. A.* (1949), *p.* 2. As there revealed, the recommendation of Dean Lewis led to the adoption of a resolution rescinding any prior action which might limit the committee to "what is known as the entity theory." In 1910 the committee and a group of experts recommended that the act "be drawn on the aggregate or common law theory with the modification that the partners be treated as owners of the partnership property holding by a special tenancy which should be called tenancy in partnership." In 1911 Dean Lewis was requested to prepare a draft on "the so-called common law theory," and in 1912 the committee reported a draft "drawn on the aggregate or common law theory, with the modifications referred to." With amendments not negating that basic thesis, the uniform act was recommended for adoption. In harmony with the decision thus reached, a partnership was defined to be "an association of two or more persons to carry on as *co-owners* a business for profit," *R. S.* 42:1–6(1), as contrasted with the Ames proposal of "a *legal person* formed by the association of two or more individuals for the purpose of carrying on a business with a view to profits." We note parenthetically that the definition in *R. S.* 42:1–2 of "person," as that word is used in the statute, to include "partnership" does not contradict the express definition of a partnership which we have just quoted. See *Lewis, "The Uniform Partnership Act," supra* (29 *Harv. L. Rev.,* at *p.* 293).

As indicated above, the uniform law adopts the common law approach with "modifications" relating to partnership property. Dean Crane thought some provisions silently em-

braced the entity thesis. Dean Lewis disagreed in the article cited above. Ultimately it is not too important whether a specific result directed by the uniform law is dressed in garb of the entity concept, provided the fictional personification is confined to the specific result and is not used as a premise for syllogistic thrusts elsewhere.

With this qualification in mind, it may be said in general terms that the uniform law is consistent with the entity approach for the purposes of facilitating transfers of property, marshalling assets, and protecting the business operation against the immediate impact of personal involvements of the partners. See *R. S.* 42:1–25 to 28 and 40. We have accordingly held that a partnership creditor may seek to reach partnership assets by an action against the partnership as such, without however thereby implicating the personal liability of the individual partners. *X-L Liquors, Inc. v. Taylor*, 17 *N. J.* 444, 456–457 (1955). So also a workmen's compensation proceeding may be maintained against the partnership as a vehicle for reaching the insurer's contractual obligation to it. *Scaglione v. St. Paul-Mercury Indemnity Co.*, 28 *N. J.* 88 (1958). And again, to serve the statutory objective of insulating the business operation against immediate disruption because of the misfortunes of a member, we held that the partnership may enforce an insurer's contractual obligation to it notwithstanding that the offending partner's conduct (assault and battery) would deny him benefit of the coverage, reserving, however, the question of the offender's obligation to respond to the carrier as subrogee of the right of the other partners or the partnership to indemnification. *Malanga v. Manufacturers Cas. Ins. Co.*, 28 *N. J.* 220 (1958).

But with respect to the subject here pertinent, to wit, liability for performance of obligations, contractual or other, including obligations to employees, the uniform law plainly did not adopt an entity theory. On the contrary, the members of the association are personally liable and immediately suable. *R. S.* 42:1–15 and 40. And since the partners are co-owners and have "equal rights in the management and

conduct of the partnership business," *R. S.* 42:1–18(*e*), we cannot conceive of any incident of the employer-employee relationship which is here lacking. We have no doubt, therefore, that under the uniform partnership law employees, although in a sense employees of the partnership with respect to its assets, are employees of the individual partners.

The Legislature, of course, may determine to deal with a specific situation upon the entity approach, *Finston v. Unemployment Compensation Commission,* 132 *N. J. L.* 276 (*Sup. Ct.* 1944), affirmed *sub nom. Naidech v. Unemployment Compensation Commission,* 134 *N. J. L.* 232 (*E. & A.* 1946), and hence the question arises whether that purpose can be found in the Workmen's Compensation Law. "Employer" is there defined to include "natural persons, partnerships, and corporations." *R. S.* 34:15–36. That the Legislature recognized the partnership as an employer to the end that procedurally it may thus be sued and its assets reached, is clear enough. But we should not lightly conclude that the Legislature intended to exclude the individual partners from liability to perform the contract of employment, including the express or implied obligation to pay the scheduled benefits pursuant to *R. S.* 34:15–7. We find no evidence of a purpose thus to limit the employee's redress. On the contrary, it has been held (both before and since the adoption of the Uniform Partnership Act) that the individual partner is an employer and as such is liable and immediately suable for compensation benefits. *Weir v. New Amsterdam Casualty Co.,* 128 *N. J. L.* 214, 218 (*Sup. Ct.* 1942), affirmed on opinion below, 129 *N. J. L.* 102 (*E. & A.* 1942); *Belvidere v. Waldron,* 129 *N. J. L.* 587 (*Sup. Ct.* 1943); *Sprague v. Reeves,* 39 *N. J. L. J.* 208 (*C. P.* 1916).

So also, it has been generally held elsewhere that a working partner may not obtain compensation benefits from the partnership by resort to the entity theory, since the partner-employee would also be an employer. 1 *Larson, Workmen's Compensation Law* (1952), § 54.31, *p.* 791. And in *Carle v. Carle Tool and Engineering Co.,* 36 *N. J. Super.* 36 (*App. Div.* 1955), in which a working

member of limited partnership association formed under *R. S.* 42:3–1 recovered under the Compensation Law, the court was careful to differentiate that association from a partnership under the uniform law. It appropriately stressed that the members of the limited partnership association are not personally liable for the obligations of the association beyond their subscription to its capital and "do not conduct its affairs as individual partners who in ordinary partnership have equal rights in the management and conduct thereof" (36 *N. J. Super.* at *page* 40).

Article 2 of the Compensation Act was intended to substitute finite liability for the fortuities of the common law remedy. An agreement to abide by article 2 constitutes "a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof." *R. S.* 34:15–8. That policy would be defeated if plaintiff's proposition were accepted. *Williams v. Hartshorn,* 296 *N. Y.* 49, 69 *N. E.* 2d 557 (*Ct. App.* 1946). The partners, although liable without fault for compensation benefits, would be denied the promised immunity. A partner who is negligent, be it in the maintenance of the premises or conduct of the work, would be liable at law. Logically, all of the partners would also be liable by virtue of the mutual agency under the uniform act. Plaintiff seeks to avoid this implication by suggesting a line between the offending partner and the others, but that line would be artificial unless some policy consideration rationally supports it. The only apparent basis would be a moral indignation arising from the fact of negligence. But there is no room in the compensation scheme for indignation against either a negligent employer or a negligent claimant. Such was the very approach of the common law which article 2 of the compensation law was designed to eradicate. The fundamental thought is that an employer liable under article 2 may not be pursued at law. Thus in states in which a general contractor is a "statutory-employer" liable for compensation, it is usually held that he is entitled to the promised *quid pro quo,* immunity from common law lia-

bility. 2 *Larson, Workmen's Compensation Law* (1952), § 72.31, *p.* 175.

■■ For these reasons we agree with *Parker v. Zanghi, supra* (45 *N. J. Super.* 167), and the New York decision in *Williams v. Hartshorn, supra* (69 *N. E.* 2d 557), and decline to subscribe to the contrary thesis of the Minnesota cases cited above. We add that there is no conflict with the actual holding in *Felice v. Felice,* 34 *N. J. Super.* 388 (*App. Div.* 1955). There the employee-wife of a partner was awarded compensation against the partnership as such. The result was a fair adjustment between a wife's ancient inability to sue her husband for tortious injury and the statutory policy that the consequences of industrial injury be deemed to be a business expense. The observations there made with respect to the relationship between the partners and an employee were unnecessary for the decision and obviously were so regarded by the same judges when they decided *Parker.*

Plaintiff's alternative proposition is that if a partner is not inevitably a third party, yet he should be such if at the time of his negligent conduct he was not furthering the business activity for which the employee was engaged. No case is cited which so holds. Reference is made by analogy to the proposition, for which some support exists, that under statutes which exempt a "fellow employee" from common law liability the tortfeasor must be in the course of his employment to claim the exemption. 2 *Larson, Workmen's Compensation Law* (1952), § 72.20, *p.* 174.

■■ We think the record does not present this novel issue. Plaintiff contends a jury might find that on the day in question Silberberg intended to drive directly home rather than to the Union City store. Plaintiff also suggests the two stores were operated by separate partnerships. The evidence in support of these factual claims is skimpy at best, but if accepted, the result would not be affected. One can imagine interesting situations raising the issue, but it would be quite startling to find that when an employee and his employer are riding in the same automobile, the em-

ployee is in the course of his employment while the employer is not in the course of the business for which the employee was engaged. Plaintiff having been in the course of his employment in taking the car to Newark, as he concedes and the Compensation Division adjudged, it was surely appropriate for the partnership to provide him with return transportation and hence in so doing Silberberg was furthering the partnership business. And, apart from that circumstance, if the owners of a business determine to provide for their transportation to and from home as a business expense, there is sufficient connection with the business enterprise to foreclose the claim here made. An employer can agree to furnish such transportation to an employee, who thereupon is protected by the Compensation Act during that travel. *Nicolasi v. Sparagna,* 135 *N. J. L.* 131, 132 (*E. & A.* 1947). We see no reason why the same business connection should not be found where the employer makes like provision for himself. In the final analysis the presence or absence of a business connection is probably immaterial in this case. Plaintiff agrees that his contract of employment required performance of the service he rendered and, as stated above, he sought and obtained compensation benefits. If the service thus rendered were strictly personal to the Silberbergs, that is, chauffering for their private convenience, such service is nonetheless covered by the Compensation Law. The exclusive remedy of the employee against Silberberg upon that hypothesis is under article 2, and Silberberg being liable thereunder, he has a corresponding immunity from an action at law. That the partnership business paid plaintiff's salary is of no significance; plaintiff is not concerned with the fiscal arrangements or adjustments between the Silberbergs as individuals and the Silberbergs as partners.

## II.

With respect to the judgment in favor of Nitolli, plaintiff claims prejudicial error because of the admission of

evidence that he had recovered compensation benefits. *La Rocca v. Ench,* 35 *N. J. Super.* 53 (*App. Div.* 1955).

The evidence admitted was material to an issue between plaintiff and Silberberg. Plaintiff could have obviated the problem by stipulating that he was injured by an accident arising out of and in the course of his employment with the Silberbergs. Indeed, counsel for Nitolli, who strongly opposed the proof because of the possibility that his client would be prejudiced by the compensation finding of total disability, suggested that course, but plaintiff did not agree. And when, in these circumstances, the trial court admitted proof of compensation proceedings only as to the bare essentials needed by Silberberg in support of his defense, plaintiff, although protesting the receipt of any evidence, then pressed unsuccessfully for the admission of the entire judgment, obviously to seek the advantage which Nitolli feared. In the circumstances, the trial judge properly received the evidence on a contested issue before him. He instructed the jury to disregard it with respect to the controversy between plaintiff and Nitolli. We find no error.

Much of the difficulty could have been avoided and the trial expedited if the pretrial conference had not been so casual. The sole reference to the compensation matter in the pretrial order is a statement of Silberberg's contention that "he is under no legal liability to plaintiff since plaintiff was his employee and the injuries were sustained in the course of his employment" and the inclusion among the issues of "liability of Silberberg, as employer of plaintiff." It was incumbent upon the judge and counsel at the conference to ferret out the facts and to set forth in detail the respective position of the parties on the issue. There should have been a precise statement by each party of the underlying facts he would seek to prove. Had the conference been so conducted, the problems which arose at trial would then have been exposed and suitable stipulations or procedures would sensibly have been forthcoming.

The judgments are affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For reversal*—None.