## Wilner *v.* Croyle, Appellant.

92

Argued November 14, 1968. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, SPAULDING, and HANNUM, JJ. (HOFFMAN, J., absent).

*Frank A. Orban, Jr.,* for appellants.

*Archibald M. Matthews,* for appellee.

*W. Louis Coppersmith,* and *Margolis and Coppersmith,* for appellee.

Opinion by Jacobs, J., March 20, 1969:

On September 6, 1966, plaintiff Norman S. Wilner, trading as Wilner Construction Company, entered judgment on a note against defendants Dorsey W. Croyle and Esther P. Croyle, husband and wife, in the amount of $7500. This note was executed and delivered by defendants to plaintiff in connection with a $7100 home improvement contract for remodeling of the wife's individually owned house. A writ of execution was issued on October 3, 1966, and the sheriff subsequently levied on both the individually owned real property of the wife and the individually owned real property of the husband. On October 10, 1966, the plaintiff directed the sheriff to abandon his levy on the real property of the husband and to proceed only against the wife's real property.

On November 23, 1966, the wife filed a petition to open the judgment, asserting that plaintiff failed to complete the work in accordance with the contract.[1] The defendant-wife then filed a second petition on De-

---

[1] This petition was later disposed of by directing the plaintiff to enter a credit of $200 on the judgment and no objection was made.

cember 9, 1966, seeking a rule to show cause why the plaintiff should not include in the execution the real property of the defendant-husband. The second petition also requested the court to make an order directing a fair contribution between the joint defendants in accordance with the Act of April 22, 1856, P. L. 532, §9, 12 P.S. §808. The court stayed the writ of execution in response to the first petition, granted rules on both petitions, and both petitions and the answers thereto came on for hearing on February 21, 1967.

After a full hearing, the lower court entered an order staying the writ of execution against the property of the wife, not exceeding thirty days, until the plaintiff reinstated or renewed the levy as to the property of the husband. The order further provided that if an amicable settlement between the parties was not reached within thirty days, the sheriff was to reinstate the levy against the husband's property and proceed with the writ of execution and sell both properties. No settlement was effected and the husband brought this appeal contending that the court below could not control the execution process in the manner directed by its order.

A brief recital of the factual background of this case is necessary for an understanding and determination of the issues involved. The husband and wife were a widower and widow, respectively, and each owned real estate in his own name. They were married in April, 1966, and the husband and his two minor children planned to move into the wife's house. Although the house was apparently satisfactory for the wife's own use, the parties agreed that because of the marriage and their intent to reside together certain improvements to the property would be desirable. Consequently, the husband and wife entered into a home improvement contract with the plaintiff and both

signed the $7500 judgment note on which they were jointly and severally liable. The project was to be financed upon completion to the extent of $5000 by a bank loan arranged by the plaintiff. The husband agreed to pay off a lien against the wife's property and to pay the balance of the contract price over and above the $5000 bank loan.

During the remodeling the husband and one of his children lived in the wife's home at least occasionally and the husband supervised many of the details of the improvements. Marital difficulties arose between the parties about the time the job was completed and they are now living in separate homes. When a completion certificate could not be obtained, the bank loan fell through, the plaintiff entered judgment on the note, and the proceedings outlined above were begun.

There can be no doubt as to the power of the court to stay the execution. Executions have traditionally been within the equitable control of the court from which issued. *Capozzi v. Antonoplos*, 414 Pa. 565, 201 A. 2d 420 (1964); *Fedun v. Mike's Cafe, Inc.*, 204 Pa. Superior Ct. 356, 204 A. 2d 776 (1964). This power is affirmed in Pa. R. C. P. No. 3121(b), which provides that execution may be stayed by the court "upon its own motion or application of any party in interest showing . . . (2) any other legal or equitable ground therefor." Having concluded, as will be detailed later in this opinion, that execution against the wife's property alone would be, in the court's words, "manifestly unjust and inequitable" and result in impoverishment of the wife and enrichment of the husband, the court had adequate equitable grounds to stay the execution. See 4A Anderson, Pa. Civ. Proc. §3121.13 at 458 (1962).

The question for decision in this case is whether the court below has the power to control the execution

process in the manner indicated in its order. In petitioning the court to include her husband's real estate in the execution, the wife-defendant cited as authority the Act of April 22, 1856, P. L. 532, §9, 12 P.S. §808, which provides:

"Whensoever the real estate of several persons shall be subject to the lien of any judgment to which they should by law or equity contribute, or to which one should have subrogation against another or others, it shall be lawful for any one having right to have contribution or subrogation, in case of payment, upon suggestion by affidavit and proof of the facts necessary to establish such right, to obtain a rule on the plaintiff, to show cause why he should not levy upon and make sale of the real estate liable to execution for the payment of said judgment, in the proportion or in the succession in which the properties of the several owners shall in law or equity be liable to contribute towards the discharge of the common incumbrance, otherwise upon the payment of such judgment to assign the same for such uses as the court may direct; and the court shall have power to direct to what uses the said judgment shall be assigned, and when assigned, direct all execution thereupon, so as to subserve the rights and equities of all parties whose real estate shall be liable thereto; and if the plaintiff shall refuse to accept his debt and make such assignment of his judgment, the executions thereupon in the hands of the plaintiff shall be so controlled and directed by the court as to subserve said rights and equities."

We see nothing inconsistent between the Act of 1856 and Pa. R. C. P. No. 3124, which provides that "Real or personal property sufficient in amount to satisfy the judgment, interest and probable costs, may be sold in any order or simultaneously as the plaintiff may direct." The Act of 1856 is not suspended by this rule,

nor is it intended to be: "A defendant threatened with an unjust execution sale may apply to the court under Rule 3121(b)(2) for a stay of execution on equitable grounds." Goodrich-Amram Civil Proc. Rules Service §3124-1 at 198 (1967). Thus, when the equitable grounds fall within the scope of the Act of 1856, it is proper that its provisions for the control of the execution be invoked in conjunction with a stay as was here done.

The lower court in its opinion did not refer to the Act of 1856 but referred only to Pa. R. C. P. No. 3121 (b)(2). The appellant argues that the lower court had no power to control the execution under that rule. Assuming arguendo that the appellant is correct, it does not follow that we cannot affirm the lower court. A correct decision of the lower court will be sustained on appeal if it can be sustained for any reason whatsoever regardless of the reason given by the court below. *Sherwood v. Elgart*, 383 Pa. 110, 117 A. 2d 899 (1955).

The Act of 1856, set forth in full at p. 96, supra, gives the court of common pleas the power to control the execution process in certain specified circumstances. "Being statutory, the power is legal, and extends . . . to all cases where the estates of several persons shall be subject to the lien of any judgment to which they should by law or equity contribute. The court may, therefore, order the properties liable to the common encumbrance to be sold in the proportion, or in the succession, in which the properties of the several owners shall in law or equity be liable to contribute toward its discharge, or compel the plaintiff on payment to assign his judgment. . . . These powers are so clearly remedial and adapted to cases in which the court had not before been accustomed to grant relief, by compelling the plaintiff to proceed in his execution so as to do no

injustice; they should be exercised in the very spirit of the act itself." *Roddy's Appeal*, 72 Pa. 98, 99-100 (1872).

The appellant husband first contends that the Act of 1856 is inapplicable because he was a surety. He argues that the debt of the note is the debt of the wife alone, since the note was given for materials and labor to improve her separate real estate, and that he was at most a surety since he signed the note because "that was the only way it would go through." Hence the husband asserts that he has the right to insist that the wife's property be sold first in satisfaction of the debt, citing *Miller Lumber & Coal Co. v. Berkheimer*, 342 Pa. 329, 20 A. 2d 772 (1941). The *Miller* case (in which the roles of the husband and wife were reversed) is not controlling for two reasons. It was clear that the debt in *Miller* was the debt of the husband alone—the wife received no benefit whatsoever. In the instant case the lower court found that the obligation was incurred for the mutual benefit of the husband and wife. Secondly, *Miller* and the older cases it relies upon involve pre-existing debts of the spouse for which the other spouse acted as surety in mortgaging his own land or joining in a mortgage on land owned as tenants by the entireties. See, e.g., *Stewart v. Stewart*, 207 Pa. 59, 56 A. 323 (1903).

As far as the creditor is concerned, when two or more persons execute a promissory note as makers and as part of the same transaction, absent a contrary specification in the instrument, they are jointly and severally liable. Uniform Commercial Code of April 6, 1953, P. L. 3, §3-118(e), 12A P.S. §3-118(e); *Roller v. Jaffee*, 387 Pa. 501, 128 A. 2d 355 (1957). As between themselves, however, the true relationship of the parties may be shown. *Taussig's Appeal*, 221 Pa. 62, 70 A. 294 (1908). After a careful study of the circum-

stances surrounding the execution of the joint obligation, the court below was convinced that Mrs. Croyle was not a principal who received all the benefits of the transaction, but that the transaction was for the benefit of both husband and wife. In fact, the lower court was satisfied that the proceeds of the loan were used as much for the benefit of the husband as for the wife. We agree. The husband did not sign in order to answer for the default of his wife, but as a principal and co-maker.

The general rule of apportionment in contribution is that all co-obligors must contribute equally in discharging their common obligation. *Dowler Estate*, 368 Pa. 519, 84 A. 2d 209 (1951); *McGlinn's Estate*, 55 Montg. 5 (O.C. Pa. 1938); 18 Am. Jur. 2d Contribution §19. This has been called a presumption which may be rebutted by showing that one signed for the accommodation of the other or that one received all the proceeds of the loan, *Dowler Estate*, supra; *Hess v. Gower*, 139 Pa. Superior Ct. 405, 11 A. 2d 787 (1940); *McGlinn's Estate*, supra, or by showing an inequality of benefits received, in which case each is liable to contribute in proportion to the amounts actually received. 18 Am. Jur. 2d Contribution §24. We think that the general rule in this case has not been rebutted and that the husband and wife are liable to contribute equally to the common obligation. We have already determined that the husband was not a surety or accommodation maker. The tenor of the lower court's opinion and resulting order show rather clearly that it had concluded that the husband and wife were equally benefited and equally obligated. We agree. When the lower court has so concluded, after hearing the evidence presented by the parties, there is no validity to the appellant's argument that the rights between the co-obligors have not been determined.

Nor are we influenced by the fact that the proceeds of the joint obligation were used to improve the wife's separate property. The result we have reached is dictated by analogy to *Dowler Estate*, supra. In *Dowler*, the husband and wife executed a bond and mortgage on their real estate owned as tenants by entireties. After the wife's death the surviving husband paid the bond and mortgage and demanded contribution of one-half of the payment from his wife's estate. Although he now was the sole owner of the real estate which was benefited by his payment of the mortgage, the court allowed him contribution for one-half of the amount paid. The controlling factor in that case, as here, was that the indebtedness was the personal obligation of both and was incurred for the benefit of both.

Although no cause of action for contribution arises until one obligor pays more than his just share of the common obligation, *Morrison v. Warner*, 197 Pa. 59, 46 A. 1030 (1900), it is not necessary that the wife pay or offer to pay the joint obligation before the Act of 1856 can be invoked. The Act is in the alternative. See *Roddy's Appeal*, supra at 100; *Ruff v. Barclay-Westmoreland Trust Co.*, 79 Pa. Superior Ct. 370, 372 (1922); *Johnson v. Brown*, 19 Dist. 532 (C.P. Pa. 1909). In the second alternative a joint defendant may pay the judgment and request an assignment. In the first alternative, the Act provides that "Whensoever the real estate of several persons shall be subject to the lien of any judgment to which they should by law or equity contribute, . . . it shall be lawful for any one *having right to have contribution* or subrogation, *in case of payment* . . . to obtain a rule on the plaintiff. . . ." (Emphasis added). The first alternative does not require the petitioner to have a presently existing right to contribution in order to seek relief, but only to prove that she *would* have this right if she paid the debt. That she has done.

Finally the appellant husband contends that the wife's petition under the Act of 1856 is fatally defective because it fails to allege that the judgment is a lien on the wife's real estate, citing *Phelps's Appeal*, 98 Pa. 546 (1881). In *Phelps's Appeal*, however, some of the petitioners expressly reserved the right to contest whether the judgment was a lien on their real estate. As the court correctly pointed out, without such lien the petitioners had no ground to invoke the Act. In this case, however, the wife petitioner admits the judgment and levy and proposed sale of her land under the execution issued on the judgment. This is sufficient to invoke the Act, particularly when the court could take judicial notice that the judgment is a lien against the wife's separate real estate by virtue of the Act of July 3, 1947, P. L. 1234, §2, 12 P.S. §878.

Both the husband appellant and wife appellee are fully liable for the entire obligation and upon payment of the same either would be entitled to collect one-half from the other. Neither is apparently willing or able to pay off the obligation and proceed against the other for contribution. The execution creditor has been delayed in recovering his admitted claim for more than two years while the obligors have been attempting to adjust their differences. In view of these facts, we see nothing legally or equitably wrong with the lower court's direction that both properties be sold to satisfy the debt. Sale of the respective properties, however, should be "in the proportion . . . in which the properties of the several owners shall . . . be liable to contribute towards the discharge of the common incumbrance. . . ." Act of 1856, supra. The husband and wife, as between themselves, are liable to contribute equally to the common encumbrance. Hence, insofar as possible, each property should be sold to pay one-half of the judgment, interest and costs.

The order of the court below is affirmed with directions to that court to retain control of the execution process in accordance with this opinion to see that the rights and equities of all parties are protected.