## Peoples National Bank of Souderton
## v. Onorato
## Franciosa v. Onorato

*Sidney M. DeAngelis,* for plaintiffs.
*Philip Detwiler,* for defendants.

LOWE, J., August 30, 1972.—The two above-captioned proceedings were consolidated for trial. The

former concerns a promissory note on the face of which the makers ostensibly appear to be use plaintiffs, Antonio Franciosa and Ester Franciosa, his wife, and defendants, Michael Onorato and Rita E. Onorato, his wife.

Dr. and Mrs. Onorato contend their role in the execution of the note was that of accommodation makers, and that their liability on the instrument was discharged or extinguished when the Franciosas, the parties accommodated, paid the face amount of the note to the payee bank on June 1, 1965. The Franciosas, on the other hand, contend the Onoratos were, in fact, real parties in interest and comakers with them in the execution of the note and that there is a right of contribution to the extent of one-half the amount paid the bank, or $2,975.75: Kershaw Estate, 352 Pa. 205 (1945); 8A P. L. Encyc. 3 §3. The Franciosas emphatically deny the Onoratos' contention regarding an accommodation agreement between the parties.

On March 2, 1972, the jury returned a verdict in favor of plaintiffs in the amount of $3,980.06, thereby indicating its conviction defendants were comakers. To the extent the verdict exceeded the sum claimed, the jury, in its discretion, elected to award interest to the Franciosas.

A single issue dominates the disposition of this litigation: the capacity in which the Onoratos executed the promissory note.

Initially, it is to be observed the Uniform Commercial Code of April 6, 1953, P. L. 3, as amended, 12A PS §1-101, et seq., is of no assistance in assessing the conflicting contentions of the parties. Section 3-402 comes closest to the issue at bar, concerns an ambiguous signature, and provides: "Unless the instrument clearly indicates that a signature is made in some other capacity it is an indorsement." This is not such

a case, because the instrument itself makes it abundantly evident all parties whose signatures appear on the face thereof executed the same in the capacity of comakers.* The critical issue is whether or not the Onoratos executed the instrument as *accommodation* comakers. No other section of the code is pertinent. Consequently, the court must address itself to relevant principles of law to be found elsewhere.

A latent ambiguity has been defined as that situation wherein "the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings": Black's Law Dictionary, West Publishing Co., revised 4th ed., 1968. Most assuredly, such is the posture of this controversy.

Resolution of a latent ambiguity is a jury function. "When a contract is reasonably susceptible of more than one meaning, oral evidence is admissible to aid in the determination of the intent of the parties . . . When the meaning of certain terminology of a contract is doubtful or ambiguous, extrinsic evidence to show

---

* Counsel for defendants has feebly, and without conviction, contended section 3-402 is applicable because there is a question regarding the capacity in which the Onoratos signed the instrument, and that such an issue cannot be determined by parol and must be resolved under the code by holding the Onoratos to be indorsers. The court categorically rejects this argument upon the proposition the promissory note at issue "clearly indicates" that all parties who executed the face thereof did so as makers. On a form instrument wherein there are provided only two lines for makers' signatures, the Onoratos and the bank officials made the most of the situation and added the two additional signatures on lines provided just to the left of the Franciosas' signatures, an "x" mark precedes all signatures, and the preamble on the face of the note recites, ". . . we or any one of us promise to pay . . ."

the intent of the parties is admissible": 8 P.L.Encyc., 227 §172.

"When there is any ambiguity in a contract arising from reference to things which may be explained by parol evidence, its meaning is generally for the jury. A 'latent ambiguity' arises from extraneous or collateral facts which make the meaning of a written instrument uncertain, although the language thereof is clear and unambiguous. An ambiguous contract may be submitted to a jury to determine its terms outside the written words as a question of fact and by the weight of the evidence": 8 P.L.Encyc. 235 §176.

In comparatively recent years, both the Supreme and Superior Courts of Pennsylvania have addressed themselves to latent ambiguities, and each has determined that the true intent of the parties is a factual issue to be resolved by jury verdict. "A latent ambiguity arises from extraneous or collateral facts which make the meaning of a written instrument uncertain although the language thereof be clear and unambiguous . . . *Only after the court is satisfied that a latent ambiguity exists is the question of what the parties intended by language used in the contract—taking into consideration the extrinsic facts and circumstances—an issue to be submitted to the jury*": Easton v. Washington County Insurance Co., 391 Pa. 28, 35-6 (1957). (Italics in original.)

"Extrinsic evidence as to the true intent of the parties may be considered to resolve an ambiguity in a written contract": Barlett v. Beverly School Land Co., 170 Pa. Superior Ct. 307, 311 (1952).

At the conclusion of the charge to the jury, the trial judge inquired of trial counsel whether they had "any suggestions, corrections, amendments or additions to the charge." Counsel for defendant, to use his words, took only "the usual general exception to the charge." He now contends this general exception is sufficient

to preserve his previously unannounced objection to the court's failure to comment to the jury upon certain wording which appears on the face of the promissory note in question. In other words, it is contended the omission constituted basic or fundamental error. The wording in question: "It is agreed by any person, firm or corporation who writes his, her or its name on the face or back of this note, whether they are makers, endorsers, sureties or guarantors, or not, that they or any of them shall be regarded as principals as between them or any of them and the holder hereof."

The law is now well settled that "failure of counsel to object and except to any part or portion of the charge cannot be taken advantage of by a general exception . . . unless the charge contained fundamental error": Zeman v. Canonsburg Borough, 423 Pa. 450, 453 (1966). See also Vanic et ux. v. Ragni, 435 Pa. 26 (1969); Glass v. Freeman, 430 Pa. 21 (1968), and James v. Ferguson, 401 Pa. 92 (1960). This principle of law is bottomed upon the manifest truth that it is patently unfair and unjust to allow counsel to sit idly by taking his chances with what he believes to have been erroneous instructions, and then, in disappointment over a lost case, complain later upon the allegedly prejudicial but unexcepted to charge in an effort to gain a new trial: Morrissey v. Commonwealth, Dept. of Highways, 440 Pa. 71 (1970); Lobalzo v. Varoli, 422 Pa. 5 (1966).

The printed wording on the promissory note, recited above, was inserted for the purpose of preserving maximum and optimum rights in the payee Peoples National Bank or a subsequent holder. Clearly, its principal intent is to insulate the bank from intervening equities which might accrue under the Uniform Commercial Code in favor of an irregular endorser or any other party whose interest (capacity) in the instrument is unclear and uncertain. Such a provision

has absolutely nothing to do with precisely determining the question of whether a party executed the instrument as a real party in interest or as an accommodation party. On the critical issue of the capacity in which the Onoratos executed the note, the provision in question is benign, because it has no application to the rights and obligations of comakers inter se. It follows that failure to charge upon it cannot conceivably be considered a basic or fundamental error.

Taken as a whole, the charge clearly defined the issues for the jury's intelligent understanding, fairly and accurately recited the governing law and impartially reviewed the applicable testimony. This is precisely what the law demands of the trial judge: Keba v. Pickett, 434 Pa. 148 (1969); Smith v. Clark, 411 Pa. 142 (1963). In view of one of our Supreme Court's most recent pronouncements in this area, it must be concluded this controversy was presented to the jury for its determination in an eminently fair and judicious fashion because all law and fact germane to the issue was appropriately reviewed. "Alleged errors with regard to jury instructions, of course, must be considered in relation to the entire charge, particularly other portions of the charge dealing with cognate matters, and in the light of the evidence. Mount v. Bulifant, 438 Pa. 265, 265 A. 2d 627 (1970)": Brennan v. St. Luke's Hospital, 446 Pa. 339, 344 (1971).

The latter of the two proceedings above-captioned concerns the payment of withholding taxes on employes of a corporation in which both plaintiff, Antonio Franciosa, and defendant, Michael Onorato, were principal officers. The taxes in question were those due the United States for the third quarter of 1964 and until October 28, 1964, of the fourth quarter. The government sent assessment notices to plaintiff and to defendant, and both attended a meeting with

Internal Revenue Service authorities in the company of counsel who then, as now, represented defendant, Michael Onorato. As might be expected, this meeting concluded with plaintiff paying $4,994.21 to satisfy the government's claim.

This proceeding has been initiated to recover one-half the sum paid as set forth in the next preceding paragraph. It is founded upon the equitable principle of contribution and applicable Federal law which holds plaintiff and defendant equally and personally responsible for payment of the tax. "It is well settled in the law that where there are joint obligors and one of the obligors shall discharge the debt, then, that obligor shall have the right in equity to proceed against the other obligors to enforce their proportionate share of contribution": Goldberg v. Altman et ux., 190 Pa. Superior Ct. 495, 500 (1959). See also Wilner v. Croyle, 214 Pa. Superior Ct. 91 (1969).

Michael Onorato's defense to this proceeding was unintelligible to the trial judge. It was the court's view that no significant matters of defense were presented. Accordingly, a verdict was directed in favor of plaintiff: Highland Tank and Mfg. Co. v. Duerr, 423 Pa. 487 (1966); 38 P.L. Encyc. Trial §202. The sole issue presented the jury was the question of whether or not interest on the principal sum was to be awarded. The jury concluded in the affirmative and returned a verdict in the amount of $3,017.33.

It is maintained by the defense that Federal questions are involved in this controversy and that jurisdiction is properly in the Federal court structure. It is certainly true this cause of action (contribution) finds its origin in the claims of the Federal government against both plaintiff and defendant, which claims are grounded on the Internal Revenue Code. See, for example, sections 3403, 6671(b), and 6672, and 7 Research Institute, Tax Coordinator, section V2109.1,

and Scherer v. U.S. 288 F. Supp. 168 (1963). Defendant does not contest his liability under applicable Federal law. Rather, he insists that the contribution proceeding must be in the Federal forum because it is founded upon what was originally a Federal obligations. This is not true.

This is a derivative claim bottomed upon equitable principles, its nexus with Federal jurisdictional questions is remote and attenuated, and it is cognizable in a State judicial forum. "The possibility of federal jurisdiction can only be realized if the federal question is substantial": Elberti et al. v. Kunsman, 326 F. 2d 567, 568 (3rd Cir., 1967). "A claim based on state law may properly be within the jurisdiction of a federal court, on the ground that a federal question is involved, if, and only if, the federal question is substantial . . . The existence of the substantial federal question must appear from the complaint": 10 P.L. Encyc. 226 §205.