252 N.J. Super. 303 (1991)
599 A.2d 928
LA MAR-GATE, INC., PLAINTIFF-RESPONDENT,
v.
EUGENE B. SPITZ AND ELEANOR S. SPITZ, H/W, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted October 17, 1991.
Decided December 4, 1991.
*305 Before Judges KING, DREIER and GRUCCIO.
Obermayer, Rebmann, Maxwell & Hippel, attorneys for appellants (Frederick T. Cunningham, on the brief).
James E. Rafferty, attorney for respondent (James E. Rafferty, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Dr. Eugene B. Spitz appeals from a directed verdict holding him responsible for a partnership note signed by him as a general partner. We here examine the responsibility of a partner for the contractual obligations of the partnership, and the necessity to join or attempt to join all responsible partners if any is to be held individually liable. We hold such joinder or attempted joinder is required.
Dr. Spitz is a pediatric neurosurgeon who in the early 1980's formed a partnership known as CS Associates. The other original equal[1] partners were Drs. Nicholas Canuso, Raymond Silk and Abraham Cohen. The partnership intended to build and operate a nursing home. In 1983, the partners needed additional financing for the nursing home; however, their bank withdrew its letter of credit. The partnership turned to plaintiff, La Mar-Gate, Inc., a corporation wholly-owned by Dr. Canuso, which agreed to advance the funds. La Mar-Gate in turn borrowed the million dollars from the bank, additionally pledging as security a motel that it owned. The note in question, with interest to the date of judgment, had a balance due of $1,329,789.
*306 The indebtedness to La Mar-Gate was represented by a note of CS Associates, signed by three of the four partners, Dr. Canuso, Dr. Cohen and Dr. Spitz, as general partners. Dr. Spitz also was requested to sign a form of guarantee which additionally provided for his wife's guarantee of the obligation. The guarantee in turn was to be secured by certain mortgages on property owned by Dr. and Mrs. Spitz.[2]
Dr. Spitz asserted that the guarantee was signed by him on the express (and allegedly untrue) representation by Dr. Canuso that he and Dr. Cohen had already signed such guarantees, and that Dr. Silk would be signing a similar guarantee in the near future. Furthermore, Dr. Spitz contended that Dr. Canuso represented that Dr. Spitz would be responsible solely for one-quarter of the loan, in proportion to his 25% partnership interest, and that in any event the guarantee was a mere formality and would never be used against him. He sought exoneration from all of his obligations under the note and guarantee by reason of Dr. Canuso's fraud in making these representations.
When CS Associates became insolvent and filed for bankruptcy, plaintiff determined to institute this action solely against Dr. and Mrs. Spitz. As noted, the jury accepted Dr. Spitz' representation that Mrs. Spitz had not signed or authorized the signing of the guarantee and accompanying mortgage documents. When plaintiff moved for a directed verdict against Dr. Spitz, however, the judge determined that notwithstanding his factual assertions concerning his personal liability on the guarantee and accompanying security, there were no defenses to his liability on the note. The judge reasoned that since any liability on the note would be coextensive with any liability on the guarantee, there was no reason for plaintiff to press both *307 theories. The court, therefore, directed a verdict against Dr. Spitz solely on the note, and the issue of his liability on the guarantee and his fraud defenses concerning the guarantee and accompanying security were never submitted to the jury.
Dr. Spitz moved for a new trial or in the alternative reconsideration of the directed verdict. At first the motion was denied on procedural grounds, but was then renewed with a showing that procedurally the motion was properly before the court. The earlier order denying the motion was vacated and the court afforded counsel oral argument, after which the judge adhered to his original determination. The then-pending notice of appeal was amended to encompass the denial of the motion for a new trial.
The trial judge at both the motion for a directed verdict and at the motion for a new trial clearly stated that Dr. Spitz' signature on the note, rather than the guarantee, obligated him on a joint and several basis to pay the partnership obligation. Since we here determine that this statement of the law was incorrect and the jury had never been given the opportunity to pass upon Dr. Spitz' fraud claim, we must reverse and remand for a new trial concerning Dr. Spitz' liability on the guarantee and accompanying security. If the joinder issue, discussed later, is resolved, Dr. Spitz' liability on the note as a partnership obligation may also be resolved.
N.J.S.A. 42:1-15 provides:
All partners are liable:
a. Jointly and severally for everything chargeable to the partnership under sections 42:1-13 and 42:1-14 of this title.
b. Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract.
N.J.S.A. 42:1-13, incorporated by reference in N.J.S.A. 42:1-15a, relates to tort claims or other wrongful acts of a partner. See Malanga v. Manufacturers Cas. Ins. Co., 28 N.J. 220, 226-227, 146 A.2d 105 (1958). N.J.S.A. 42:1-14 relates to a partner's breach of trust involving misapplication of money or property received from a third person. The partnership note in *308 issue here, however, is one of "all other debts and obligations of the partnership" for which a partner is only jointly (rather than jointly and severally) liable under N.J.S.A. 42:1-15b.
While plaintiff has urged that there should be joint and several liability for all partnership debts and that this is a time-honored common-law rule in New Jersey, the case cited by plaintiff, Edison Elec. Illuminating Co. v. De Mott, 51 N.J. Eq. 16, 19, 25 A. 952 (Chan. 1893), predated the 1919 Uniform Partnership law, N.J.S.A. 42:1-1 et seq. See also Wisham v. Lippincott, 9 N.J. Eq. 353, 354 (Chan. 1853); Randolph v. Daly, 16 N.J. Eq. 313, 316 (Chan. 1863); Greene v. Butterworth, 45 N.J. Eq. 738, 739 (Perog.Ct. 1889), all of which predate the adoption of the Uniform Partnership law. The later cases cited by plaintiff, Mazzuchelli v. Silberberg, 29 N.J. 15, 148 A.2d 8 (1959), and Lyon v. Barrett, 89 N.J. 294, 445 A.2d 1153 (1982), both involve responsibility outside of the contract setting. While a few states (Arizona, Missouri, North Carolina, Tennessee and Texas) have departed from the Uniform Act in order to make contractual as well as tort responsibility joint and several, New Jersey has not chosen this option.
It is true that under N.J.S.A. 42:1-40d, upon dissolution of a partnership[3] individual partners are responsible according to the share of profits (in this case 25% for Dr. Spitz). But, if another partner is insolvent, or not being subject to process, refuses to contribute, "the other partner shall contribute their share of the liabilities, and, in the relative proportions in which they share the profits, the additional amount necessary to pay the liabilities." Ibid. This rule was recognized in Mazzuchelli v. Silberberg,[4] 29 N.J. at 21, 148 A.2d 8.
*309 While we can find no case directly on point in New Jersey, cases determined under the Uniform Partnership law have upheld the statutory direction that contractual claims against a partner are joint rather than joint and several. See, e.g., Cunard Line Ltd. v. Abney, 540 F. Supp. 657, 659-660 (S.D.N.Y. 1982). There, Judge Knapp stated that the defendant joint-obligor has "the right to insist that the plaintiff join other such obligors if joinder is possible." Id. at 659. The judge further explained
The individual joint obligor is a necessary party (not an indispensable one) in an action against one or more of the joint individual obligors.... By contrast, if the obligors are also `severally' liable  as in the case of partners charged with a partnership tort liability ... then they are merely proper parties to an action against them individually.... Consequently, they don't even have the right to insist on joinder and the plaintiff may freely `pick his target.' Caplan v. Caplan, supra, 268 N.Y. [445] at 448, 198 N.E. 23 [(1935)].
540 F. Supp. at 659, n. 3. See also Concra Corp. v. Andrus, 141 Vt. 169, 446 A.2d 363, 365 (Vt. 1982), where the court stated:
Partners are both jointly and severally liable for torts and breaches of trust, ... but they are only jointly liable for contract liability; [citing 11 V.S.A. § 1207(2), the Vermont equivalent of N.J.S.A. 42:1-15b].
In that case, however, the difference between joint and joint and several liability was held to be academic since all jointly responsible parties were joined.[5]See also Deist v. Timmins, *310 32 Ohio App.3d 74, 78-79, 513 N.E.2d 1382, 1386 (Ct.App. 1986); White v. Jackson, 252 S.C. 274, 166 S.E.2d 211, 214 (1969) (recognizing the joinder requirement where there is a joint obligation, but questionably imposing a similar joinder requirement of all partners when the partnership asserts a claim as a plaintiff); Merchant's Nat'l Bank of Los Angeles v. Clark-Parker Co., 215 Cal. 296, 9 P.2d 826, 827 (Cal. 1932) (same). In the case before us we have a contract rather than a tort claim, and the plaintiff may not in the words of Cunard Line Ltd. v. Abney, supra, 540 F. Supp. at 659, n. 3, "pick [its] target."[6]
Rule 4:28-1(a)(1) requires the joinder of a person subject to service of process if "in the person's absence complete relief cannot be accorded among those already parties." In the case before us, given the provisions of N.J.S.A. 42:1-15b and 42:1-40d, the remaining partners should have been made parties to this action.
The difficulty with this analysis is that if all of the jointly responsible parties are joined and the partnership is in dissolution, a contract creditor may still reach the individual assets of any partner. As noted earlier, each partner must pay any additional amount to the extent that other "partners are insolvent, or not being subject to process, refused to contribute." N.J.S.A. 42:1-40d. However, in such a proceeding, a *311 partner has a right to have the other responsible partners joined. Therefore a suitable cross-claim for contribution can be made, and in fact, must be made under the entire controversy doctrine. See Cogdell v. Hosp. Center at Orange, 116 N.J. 7, 26, 560 A.2d 1169 (1989). In fact, since the Cogdell decision, a defendant is required to make a germane claim against even a nonparty to the action. Id. at 28, 560 A.2d 1169; see also Reno Auto v. Prospect Park Sav. & Loan, 243 N.J. Super. 624, 630, 581 A.2d 109 (App.Div. 1990).
We will not apply any entire controversy preclusion here against Dr. Spitz since plaintiff's claim asserting Dr. Spitz' joint and several responsibility was deficient; its only viable claim on the note was for joint responsibility and could be asserted only in a proceeding in which the other responsible partners were joined, or their absence explained. Certainly, as to Dr. Canuso's 50% personal responsibility as a joint obligor, his presence as a witness at the trial (absent some other valid defense) is presumptive evidence of his availability as a codefendant, notwithstanding his ownership of the plaintiff corporation. Similarly, claims might be asserted against Drs. Cohen and Silk, although Dr. Cohen's responsibility might have been affected by any agreements made at the time his interest was transferred to Dr. Canuso. In summary, therefore, insofar as the claim was limited by the court to Dr. Spitz' responsibility on the note, his obligation might well be limited in this action to 25% of the indebtedness, augmented by the uncollectible portion attributed to another partner.
The trial court determined that plaintiff's claim based upon Dr. Spitz' alleged contemporaneous guarantee of the obligation was mere surplusage, and terminated the litigation before the enforceability of the guarantee and the contrary claim of Dr. Spitz of fraud could be determined by the jury. While there has been no cross-appeal by plaintiff from this determination, we note that the trial was terminated by the court on different grounds before the issue could be resolved. *312 We therefore will not consider plaintiff to be collaterally estopped from asserting this claim at any retrial, nor will Dr. Spitz be precluded from reasserting his defense of fraud.
The judgment appealed from is reversed. The matter is remanded to the Law Division for retrial in accordance with this opinion.
NOTES
[1] Prior to the institution of this action Dr. Canuso acquired Dr. Cohen's interest in the partnership, and thus became a 50% owner.
[2] At the trial both Dr. and Mrs. Spitz contended that her purported signature on the guarantee and mortgages had in fact been signed by Dr. Spitz without Mrs. Spitz' knowledge or authority. This issue was presented to the jury which exonerated Mrs. Spitz.
[3] Under N.J.S.A. 42:1-31, "Dissolution is caused ... 5. By the bankruptcy of any partner or the partnership."
[4] In that case, however, the partners were deemed individually and directly responsible for workers' compensation as individual employers. While not explicitly stated, we assume that the workers' compensation liability discussed in Mazzuchelli stands in place of general tort responsibility, which would be governed by the joint and several responsibility rules of N.J.S.A. 42:1-15a. See also Lyon v. Barrett, 89 N.J. at 303, 445 A.2d 1153 (explaining the tort basis of the workers' compensation claim against an individual partner).
[5] We note that the Vermont court stated at the conclusion of its opinion that notwithstanding the imposition of solely a joint judgment "payment of the entire judgment may be levied against and satisfied by any one of the parties held jointly liable." 446 A.2d at 366. The authority cited for this statement is Traylor v. Grafton, 273 Md. 649, 672, 332 A.2d 651, 672 (1975). A reading of that case, however, shows the proposition not to be as definite as stated by the Vermont court. The Maryland court noted that Pennsylvania law might apply and that a joint obligor entitled to contribution might require the obligee "to levy upon or make sale of the real property of [the other joint obligor], in proportion to or in the succession in which, the properties of the several joint obligors might be liable to contribute toward the discharge of the common encumbrance." 332 A.2d at 673 (citations omitted). The Maryland court merely entered judgment against the defendants jointly, and did not provide for individual responsibility to discharge the judgment. In fact, one of the cases the court cited, Wilner v. Croyle, 214 Pa.Super. 91, 252 A.2d 387 (Super.Ct. 1969), held specifically that the property of each of the joint obligors should be sold and the judgment satisfied ratably from the proceeds. 252 A.2d at 392.
[6] If all joint obligors are made parties-defendant, and only one or more are served, the plaintiff still can proceed against those served. See N.J.S.A. 2A:55-1. To that extent, a plaintiff may pick a target. Note also that under N.J.S.A. 2A:55-2 if a joint debtor dies during the lifetime of another joint debtor, a representative of the deceased debtor can be charged as if the joint debtors had been jointly and severally liable. The distinction made by the Legislature in this latter statute indicates the viability of the dichotomy between a joint as opposed to a joint and several obligation.