## American Equitable Assurance Company of New York *v.* Mussoline, Appellant.

Argued March 4, 1963.  Before RHODES, P. J., ER-
VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and
FLOOD, JJ.

*Conrad A. Falvello,* for appellant.

*George I. Puhak,* with him *Richard A. Kane,* for appellee.

OPINION BY FLOOD, J., June 12, 1963:

This is an appeal from a judgment for the plaintiff on the pleadings in an action to recover back the amount paid to the defendant under a policy insuring him against the theft of a mink coat. The policy contains a clause entitling the plaintiff company upon payment of the loss to be subrogated "to all the Assured's rights of recovery against any person" and requires the insured "to do nothing after loss to prejudice such rights".

The complaint avers that on January 11, 1960, the defendant took the coat to George Gordon, who was making a trip to New York the following day, and that two days later Gordon advised the defendant that upon his return he opened the trunk of his car and found that the coat was missing. On January 21, 1960, the defendant gave Gordon a general release of all claims "especially for, upon, or by reason of one full length mink coat 'Breath of Spring' stolen from the car of George Gordon on January 12, 1960." On March 12, 1960, the plaintiff, in settlement of the defendant's claim under the policy, paid him $2966.

The defendant admitted these facts in his answer but set up by way of new matter that the coat was stolen and, although the theft was reported by Gordon to the police, it has not since been found, nor have the thieves been apprehended. He also avers that the plaintiff knew of the theft at the time it paid the de-

fendant and has no cause of action against Gordon. The plaintiff filed no reply.

The court below granted judgment for the plaintiff on the pleadings, holding that an insurer may recover back the amount paid to one who has settled with a third party tortfeasor, thereby defeating the insurer's subrogation rights, that in a suit to recover back the amount paid to the insured, the insurer's complaint need not set forth facts showing the tortfeasor's negligence in causing the loss, and it is not obliged to establish that it would have prevailed in its suit against the alleged tortfeasor.

The appellant admits that he gave the bailee, Gordon, a release, but contends that (1) no cause of action exists against Gordon, since the coat was stolen from him and (2) there is no averment that any consideration was given for the release.

1. The defendant, and the plaintiff by way of subrogation, would have a right of action against the bailee even if the coat had been stolen if his negligence made the theft possible. Liability might require the establishment of a greater or lesser degree of negligence on his part, depending upon the nature of the bailment. 8 C.J.S., Bailments, §26 et seq. See *Nolde v. WDAS Broadcasting Station,* 108 Pa. Superior Ct. 242, 245, 164 A. 804, 805 (1933). But given the requisite degree of negligence, there would be liability. *Moss v. Bailey Sales & Service Co., Inc.,* 385 Pa. 547, 553, 123 A. 2d 425 (1956). It is true that no presumption of negligence on the part of the bailee arises from the mere fact that the coat was stolen while in his custody. Ibid. But, on the other hand, the bailor need not prove negligence in the first instance. To make out a prima facie case he need prove only that the goods were delivered to the bailee and not returned on demand. Ibid. at p. 550. The plaintiff has pleaded such a prima facie case against Gordon in its complaint by the averment that

defendant delivered the coat to Gordon who was making a trip to New York the next day and on his return from New York two days later Gordon advised defendant that the coat was missing. Express demand need not be proved under such circumstances, but either negligence or conversion by the bailee must appear at some stage of the testimony.

Since facts sufficient to establish a prima facie case are pleaded, which, if proved without more, would cast upon Gordon the burden of explaining what happened to the coat, and make him liable if conversion or the requisite degree of negligence on his part is shown, it cannot be said that the insured had no rights against Gordon to which the plaintiff was entitled to be subrogated. Prima facie, he had a right of action, even though Gordon had a good defense in the theft of the coat if the proofs should show no breach on his part of his duty of care as bailee. A release of that right by the insured prejudices the insurer's rights of subrogation in violation on the contract. *Illinois Automobile Insurance Exchange v. Braun,* 280 Pa. 550, 124 A. 691 (1924); *The Union Ins. Society Ltd. v. Saller,* 95 Pa. Superior Ct. 41 (1928). The plaintiff lost its right to litigate this matter against Gordon by the release, and has no opportunity to prove its case against him.

It will be noted that in neither of the last cited cases was the liability of the so-called tortfeasor to the insured judicially determined. In the first case settlement was made after suit was brought, but before trial, and a verdict was rendered by agreement in favor of the "tortfeasor". *Illinois Automobile Insurance Exchange v. Braun,* supra. In the second, the matter was settled before suit was brought. *The Union Ins. Society Ltd. v. Saller,* supra.

2. The appellant contends that no consideration is averred for the release and therefore on the motion for

judgment it must be taken that none was given. He argues that the insurance company is limited to a recovery back of such sum as he received in settlement up to the amount paid by the company to him and if nothing was paid in settlement, there should be no recovery against him. But this is not the theory of the cases above cited. Although Judge LINN said in *The Union Ins. Society Ltd. v. Saller,* supra, that the defendant could not refuse to restore to the insurer the money paid by the latter out of what the defendant received from the third party, the recovery in the settlement he was considering was more than the amount paid by the insurer, and the rationale of the decisions is not limited to mere recoupment out of the amount received in settlement. In *Manley v. Montgomery Bus Co., Inc.,* 82 Pa. Superior Ct. 530 (1924), it did not appear that anything was paid by the tort-feasor by way of settlement, but the insurer was nevertheless held entitled to recover back the amount it paid for property damage. There the insured brought suit for personal injuries and property damage against the bus company whose negligence allegedly caused the accident, but before trial he withdrew the claim for property damage and proceeded to verdict as to personal injuries only. Under the rule against splitting causes of action, this prevented a later suit for the property damage. The insured obtained a verdict for $2200 against the bus company and the court said that he must repay out of this the amount paid by the insurer for his property damage, in accordance with the terms of the subrogation agreement. However, the court pointed out that a contract for insurance "is a contract of indemnity and from its nature, the insurer, after paying to the insured the amount of a loss on a policy, is entitled to be subrogated in a like amount to the insured's right of action against the wrong-doer . . . It was not (the insured's) right therefore to

barter away or to give away the demand of the insurance company through him on the Bus Company . . ." This is a clear statement that giving away the insured's rights of subrogation, as well as bartering them away, prejudices its rights.

This appellant suggests that judgment should not have been entered for the plaintiff on the pleadings because it has not pleaded that any consideration was given for the release. It may be true that a valid release requires consideration or an equivalent such as a seal, promissory estoppel or a statement that the signer intends to be legally bound. *Caplan v. Pittsburgh*, 375 Pa. 268, 100 A. 2d 380 (1953); 76 C.J.S., Release, §10. However, even if there is doubt as to the validity of the release, the plaintiff in its subrogation suit against Gordon will be faced by this additional issue and may have to meet a contest not only on the issue of Gordon's negligence, but also on the validity of the release. It cannot be expected to know the relationship or the transactions between the insured and Gordon, and the defendant, in forcing it to assume the additional burden of setting aside the release or meeting this affirmative defense, has prejudiced its rights.

The mere fact that the release was given is some indication that Gordon feared that he might have some liability. Giving it showed a disregard by the defendant for his agreement with the insurer to do nothing to prejudice its rights. The insurer need not plead or prove that the insured has destroyed its rights but merely that he has prejudiced them. The defendant's loss has resulted from his own deliberate violation of his contract with the plaintiff. The giving of the release, irrespective of whether Gordon was liable to the defendant or whether he gave the defendant any consideration for the release, prejudiced the plaintiff's right of subrogation by throwing serious obstacles in

the way of judicially establishing any rights it might have against Gordon.

Judgment affirmed.