Fedun et ux., Appellants, *v.* Mike's Cafe, Inc.

Argued September 14, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Joseph Skale,* for appellants.

*Herbert H. Hadra,* with him *Maurice Freedman* and *Robert H. Arronson,* for appellees.

OPINION BY MONTGOMERY, J., November 12, 1964:

On December 19, 1960, Michael Fedun and Pauline Fedun, owners by the entireties of premises known as 244 North Eighth Street, Philadelphia, Pennsylvania, confessed judgment in the amount of $4,996.16 against Mike's Cafe, Inc., a Pennsylvania corporation, Samuel Gomer, and Morris Gomer, lessees, based on a ten-year lease, allegedly in default, which had been entered in-

to among the parties on September 1, 1951. On September 27, 1962, Samuel Gomer and Morris Gomer filed a petition to open the judgment but no such petition was filed in behalf of the corporate defendant. After an answer was filed by Michael and Pauline Fedun, Michael Fedun died on February 3, 1961, thereby vesting title in the surviving spouse to the property and to the judgment.[1] Thereafter depositions were taken of Pauline Fedun (appellant hereafter), Samuel Gomer and Morris Gomer (appellees hereafter), and other witnesses in behalf of the appellees. The judgment subsequently was opened. At the time of the trial before Hon. KELLER H. GILBERT, sitting without a jury, no testimony was received in evidence; but it was stipulated by the parties that the matter should be disposed of by the court on the record and the depositions, subject only to the objections appearing in the depositions. Judgment for the appellees having been entered by the lower court, the appellant is now requesting judgment in her favor or a new trial.

The damages awarded in the judgment were for unpaid rent from July 1, 1960, through August 31, 1961, the expiration date of the ten-year term of the lease, in the sum of $3,500; unpaid excess water and sewer rentals from January, 1957, to February 15, 1960, in the sum of $1,094.16; electrical repairs, $227; and attorney commissions, $175; or a total of $4,996.16.

Appellees contested the claims for two reasons, viz., (a) the landlord had assumed possession and leased the premises to a new corporation, 244 Bar, Inc., during the period of the alleged default in rentals[2] and

---

[1] The death of Michael Fedun was suggested to the court but the caption of the case was not amended. However, we shall consider it as having been amended by the elimination of Michael Fedun's name.

[2] It was stipulated that a lease between Michael Fedun and the 244 Bar, Inc., for the same premises had been entered into

(b) the appellees (Gomers) had sold the restaurant and taproom business at the leased premises on October 16, 1956, to Charles Brown, who took possession with the full consent of appellant and her husband, and said Charles Brown had occupied said premises thereafter until February, 1960, when he sold the business including the lease to the 244 Bar, Inc., also with the consent of appellant and her husband.[3]

It is appellees' contention that in November, 1960, there was no rent due and thereafter the old lease was revoked by the new lease to the 244 Bar, Inc. They also testified in their depositions that they had been released from the old lease in 1956 when they sold the business to Brown, although such release was not alleged in their petition to open the judgment.

The question of whether or not the new lease to the 244 Bar, Inc., effective January 12, 1961, affected appellees' liability under the original lease or the judgment thereon is not properly before us on this appeal. Judgment having been confessed on December 19, 1960, prior to the effective date of the new lease, January 12, 1961, appellant's rights were fixed, if at all, to the full amount of the lease in default on that date; and at the time of execution on such judgment, the appellees would have an opportunity to contest the matter of the new lease and its effect on the judgment. Executions are within the equitable control of the court from which they are issued. 7 Standard Pennsylvania Practice 270, Execution §5.

---

November 21, 1960, for five years beginning January 12, 1961, at $200 per month and that the new tenant had paid the first installment of rent on January 12, 1961, and had entered into possession on that day.

[3] It would appear that from February, 1960, until January 12, 1961, when the new lease became effective, the 244 Bar, Inc., operated the business in the same manner as Brown had operated it, under the lease to Mike's Cafe, Inc., and the Gomers.

Although the lower court made no specific findings of fact to support its judgment for the appellees, in its opinion filed after this appeal was taken it stated:

"In September 1956 a meeting took place in the leased premises between plaintiffs Michael Fedun and Pauline S. Fedun and defendants Samuel Gomer and Morris Gomer, when defendants informed plaintiffs they wished to terminate all their liability under this lease, and that such liability would be assumed by one Charles Brown, to whom they were about to sell the said restaurant and taproom business. The plaintiff-lessors orally agreed to terminate the lease as to defendant-lessees upon sale of the business to Brown as stated and, upon defendants' request, plaintiffs signed a paper to that effect. . . .

"The new tenant, Charles Brown, to whom defendants on October 16, 1956, sold their said business, took possession of the leased premises in due course, with the full consent of the plaintiffs, and occupied the same until February, 1960, when, again with the full consent of plaintiffs, he sold this business to still another buyer, namely, the 244 Bar, Inc., to whom, on November 21, 1960, Michael Fedun, one of [the] plaintiffs, admittedly executed a new lease for a five-year term beginning January 12, 1961.

"After the sale to Brown as aforesaid of their business on October 16, 1956, defendants Samuel Gomer and Morris Gomer, who are brothers, dissolved their partnership and separated."

It was solely on the basis of this finding of a release that the lower court rendered judgment for appellees. The assessment of damages was not seriously questioned by appellees and, although Judge GILBERT refers to a partnership existing between the appellees, the record clearly shows that this business was a corporate operation and not a partnership. The liquor license was in the name of the corporation from 1951

until December 30, 1960, when its transfer to 244 Bar, Inc., was approved by the Pennsylvania Liquor Control Board. Samuel Gomer testified that, "I think we signed it [the lease] as a corporation, and my brother and I signed as guarantor, or something like that." Morris Gomer testified, "Yes, after we sold to Charles Brown, we would be released of all obligations and responsibilities to Mike and Pauline, because they had their equity in the taproom. They had enough security there and they did not need us to be responsible for anything, especially when a man pays that amount of money for a taproom." Furthermore, the original lease continued until 1961, according to appellees, since it is their contention that it was revoked in that year by the operation of the new lease to the 244 Bar, Inc. We are, therefore, constrained to view this as a situation on that basis. Under these circumstances the Gomers did not transfer the business to Brown, as they say, but only their stock in the corporation. Although the depositions do not disclose this fact, such allegation is found in appellant's answer to appellees' petition. Furthermore, there is no evidence or allegation that Brown ever personally assumed the responsibilities of a lessee of the premises; neither did the 244 Bar, Inc. do so until it signed the new lease.

There is otherwise no basis in the record nor is there any reason for presuming that the parties dealt with the corporation, Mike's Cafe, Inc., as a partnership or sole proprietorship, or that we should ignore the existence of the corporation. No harm will result to any third party by our recognizing the corporation, except as to the Gomers individually, and they, themselves, have virtually conceded that the corporation continued in existence through 1960, at least. It is only when justice or public policy demands it and when the rights of innocent parties are not prejudiced thereby nor the theory of corporate entity made use-

less that the court will disregard the corporate entity. *Warren v. Motion Picture Machine Operators,* 383 Pa. 312, 118 A. 2d 168 (1955).

The appellant objects to the admission of the testimony by deposition of Samuel Gomer and Morris Gomer as to events occurring in the presence of Michael Fedun and taken after his death, under the Act of May 23, 1887, P. L. 158, §5, cl. (e), 28 P.S. §322. However, since the ownership of the premises subject to the lease admittedly was held by Michael Fedun and Pauline Fedun as tenants by the entireties and the judgment was confessed prior to the death of Michael Fedun, all right, title, and interest in both the property and the judgment devolved to the surviving spouse. Only an interest on which judgment in the case will operate is such an adverse interest as will disqualify a survivor from testifying concerning transactions with a decedent. *Logan Lumber Co. v. Knapp,* 155 Pa. Superior Ct. 580, 39 A. 2d 275 (1944). In *Western Pennsylvania National Bank v. Bradish,* 194 Pa. Superior Ct. 126, 166 A. 2d 104 (1960), we held that an adverse party seeking to enforce an obligation against the surviving spouse concerning property held by entireties prior to the death of the one spouse is competent to testify in regard to matters occurring between the parties during the lifetime of the decedent. By the nature of an estate held by tenants by the entireties, upon the death of her spouse Pauline Fedun did not succeed to the interest of her deceased husband but is now attempting to enforce only her own rights.

The appellees have argued that the judgment should be for them on the basis of any one or all of three theories: that a valid release of the liabilities of Samuel and Morris Gomer under the lease was executed because of adequate consideration therefor; that there was an effective rescission of the lease agreement be-

tween the Feduns and the Gomers supported by consideration, including actual surrender of possession of the premises to the Feduns and acceptance by them; and that the appellees have a valid defense under the doctrine of promissory estoppel. The appellees have the burden of proving their defense under one of their contended theories.

Having ruled that the depositions are admissible, the facts relating to the release interpreted most favorably to the appellees, the verdict winners, are as follows. In the fall of 1956 the Gomers decided to sell the business, Mike's Cafe, Inc., located in the leased premises, and opened negotiations with a Charles Brown for the sale of their shares in the corporation for a purchase price of $35,000. They notified the Feduns of their intention to sell and invited the Feduns on the leased premises, where the Feduns agreed, first orally, and later in writing, to cancel the existing lease as to the appellees, Samuel Gomer and Morris Gomer, on the condition that the sale of the business to Charles Brown would be effected. Samuel Gomer testified that Michael Fedun said, "Sam, you are getting thirty-five thousand dollars so you have nothing to worry about. The taproom is good enough security for us, Mr. Brown is paying a good price for it, and we will release you from all obligations under the lease, both you and your brother." Each of three deponents, Samuel and Morris Gomer, and Max Fishman, testified to the writing, which was lost subsequently. No objection to the proof by parol of the lost alleged written release having been preserved by the appellant, we shall assume that such a release was duly executed and delivered by the Feduns to the Gomers. The writing was signed by Michael Fedun and Pauline S. Fedun and read as follows: "We, Pauline and Mike, release you from all obligations under the Lease, for the balance thereof, and will not

hold you responsible whatsoever under the Lease if you sell to Mr. Brown." The business was later sold by the Gomers to Charles Brown and the Feduns were notified of the transaction. The Gomers thereafter did not visit the leased premises, heard nothing about the premises, and no demands were made on them for moneys by the Feduns until 1962, when the Gomers discovered that a judgment had been entered against them.

## Release

Appellant contends that the release was ineffective because of lack of consideration. Generally a valid release requires a consideration or an equivalent such as seal, promissory estoppel, or a statement that the signer intends to be legally bound. *American Equitable Assurance Company of New York v. Mussoline,* 201 Pa. Superior Ct. 271, 191 A. 2d 862 (1963). The record contains no allegation or proof of consideration for the release. The release was not signed under seal and no money was given by the Gomers to the Feduns for the release. There was not a writing stating that the Feduns intended to be bound legally, as provided for by the Uniform Written Obligations Act of May 13, 1927, P. L. 985, No. 475, §1, 33 P.S. §6, which is a valid substitute for consideration. Appellees argue that the acceptance by the Feduns of Charles Brown as a substitute tenant is sufficient consideration for the release under *Rosenblum v. Edwards,* 137 Pa. Superior Ct. 33, 8 A. 2d 468 (1939), in which it was held by this Court that a landlord can make a valid agreement to release a tenant, provided that the tenant secures someone else to take his place, and the agreement of the new tenant to be bound for the balance of the former tenant's term is sufficient consideration for the landlord's release of the first tenant. The record contains no evidence on which a finding of such substitution can be based.

Even the pleadings do not contain an allegation to that effect, although it has not been denied that Charles Brown became the majority stockholder of Mike's Cafe, Inc. There is no evidence of contracts between Charles Brown and the Gomers individually as to Charles Brown's accepting personal liability under the lease. We conclude that the release is void.

## Rescission

The appellees have cited ample authority to support their theory that there could have been a rescission of the contract of lease in 1956 but they have failed to offer sufficient evidence to prove the rescission. A rescission of a contract must be supported by consideration. *York Metal & Alloys Company v. Cyclops Steel Company*, 280 Pa. 585, 124 A. 752 (1924). In *Markson Bros. v. Redick*, 164 Pa. Superior Ct. 499, 506, 66 A. 2d 218, 221 (1949), quoting from 12 Am. Jur., Contracts, §412, we stated, "Each party must gain or lose something by the exchange. If the benefit or detriment is unilateral, a consideration is lacking, . . . If one party to a contract, in agreeing upon a modification of it, neither assumes an additional obligation nor renounces any right, the promise of the other is nudum pactum and void." Even if we were to assume that the Feduns and the Gomers sincerely intended to rescind the agreement of lease as to the Gomers, no consideration therefor or any gain accruing to the Feduns from the rescission appears in the record. As we have found above, there is nothing in the record to show that the Feduns accepted Charles Brown in lieu of the obligation of the Gomers, which would have been ample consideration for rescission, nor is there anything in the record alleged or proved to the effect that the Gomers paid moneys for their release. A surrender by the Gomers of physical possession of the

premises to the Feduns would have been sufficient consideration since surrender of mutual rights by the parties to a contract is sufficient consideration to support rescission. *Kirk v. Brentwood Manor Homes, Inc.,* 191 Pa. Superior Ct. 488, 159 A. 2d 48 (1960). However, the record does not show that the Gomers gave up physical possession of the premises to the Feduns. Moreover, the contract of lease specifically bound all lessees individually and jointly, creating a relationship among the lessees of joint tenancy. The Gomers could not enter into a valid rescission of the lease supported by consideration of surrender only, unless Mike's Cafe, Inc. either consented to the rescission or joined therein by surrendering physical possession of the premises to the Feduns. As has been stated previously, nowhere in the record does it appear that the Gomers individually then, in 1956, or now are acting in behalf of the corporation, have authority to so act, nor is such action or authority alleged. It is clear from the record that none of the parties ever intended that Mike's Cafe, Inc. would enter into an agreement of rescission. Even if it had done so, it is not denied that Mike's Cafe, Inc. remained in possession of the premises and it is not denied that Mike's Cafe, Inc. never tendered a surrender of the premises to the Feduns. We must therefore conclude that appellees did not meet their burden of proof on a theory of rescission of the lease.

## Promissory Estoppel

Appellees contend that appellant is estopped from holding them to the terms of the lease. Under the doctrine of promissory estoppel, a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such

action or forbearance is binding if injustice can be avoided only by the enforcement of the promise. *Atlantic Refining Company Unemployment Compensation Case*, 203 Pa. Superior Ct. 262, 199 A. 2d 735 (1964); Restatement, Contracts, §90. Appellees argue that the Feduns promised not to hold the Gomers individually liable on their obligation to pay the rent if the Gomers would sell their business, namely, sell their stock in Mike's Cafe, Inc. to Charles Brown, and that the Feduns knew that the Gomers would be acting in reliance on that promise if they sold the business to Charles Brown. Appellees rely on *Fried v. Fisher*, 328 Pa. 497, 196 A. 39 (1938), the facts in which are similar to this case. In that case one of two partners jointly liable under a lease informed the lessor of his desire to open up a new business and to be relieved of his obligations under the lease in order to do so. The Court in that case found that the opening of a new business in reliance on a promise of release was sufficient consideration under the doctrine of promissory estoppel. We find that case distinguishable on the facts. Although there was testimony in this case that Samuel Gomer had a heart condition and that his brother, Morris Gomer, became interested in a business in New York City prior to their securing the alleged release from the Feduns, there is no evidence that the Gomers conveyed this information to the Feduns nor that Morris Gomer actually opened the new business. Although the doctrine of promissory estoppel has become fully recognized in Pennsylvania, it is not to be loosely applied; if it were, any promise, regardless of the complete absence of consideration, would be enforceable. *Volkwein v. Volkwein*, 146 Pa. Superior Ct. 265, 22 A. 2d 81 (1941). We do not think that in the circumstances of this case the refusal to enforce this promise of release would lead to an unjust result. The alleged in-

duced act of the Gomers in selling their stock to Charles Brown could have been taken at any time by the Gomers without either the inducement or the consent of the Feduns. There is no provision against the sale in the lease agreement. We think that the proper interpretation of the facts in this case leads to the conclusion only that the Feduns promised merely to make a gift of release from paying the rent to the Gomers if they sold to Charles Brown. If the promisor merely intends to make a gift to the promisee upon the performance of a condition, the promise is gratuitous and the satisfaction of the condition is not consideration for a contract. *Stelmack v. Glen Alden Coal Company,* 339 Pa. 410, 14 A. 2d 127 (1940).

Order reversed, and judgment re-entered for appellant in the amount of $4,996.16, with interest from December 19, 1960.

WRIGHT, J., would affirm on the opinion of the lower court.