MARINIK, Judgment-Creditor,

v.

**THE CASCADE GROUP, Judgment–Debtor; Cascade
Distributions, Inc., Third–Party Claimant.**

Cleveland Municipal Court, Ohio.

No. 99 CVF 17837.

Decided Oct. 8, 1999.

---

*Heide L. Herrmann,* for the judgment-creditor.

*Maureen Zeto,* for the judgment-debtor.

**20**

ROBERT ZICCARDI, Magistrate.

This cause came on for hearing on August 30, 1999, before Magistrate Robert Ziccardi to whom the matter was referred pursuant to Civ.R. 53(C) to hear all issues of law and fact relating to the post-garnishment of personal property allegedly owned by the judgment-debtor, The Cascade Group ("Cascade"). Both parties were present and represented by counsel: Heide L. Herrmann for the judgment-creditor, Mark S. Marinik; Errol A. Can, for the judgment-debtor.

The case was reset for further hearing on September 13, 1999. Errol A. Can withdrew as counsel for the judgment-debtor before the hearing. Maureen Zeto entered an appearance on behalf of the judgment-debtor.

*Procedural History*

1. On August 9, 1999, Marinik certified a judgment in the amount of $56,000 (later amended to $86,016.35) from the Cuyahoga Court of Common Pleas to the Cleveland Municipal Court for execution in Cleveland Municipal Court case No. 99 CVF 17837. Marinik then caused three writs of execution for the garnishment of personal property owned by Cascade to be issued. The garnishment orders were served upon two separate garnishees and resulted in the attachment of two PSLs (licenses to purchase Cleveland Browns season tickets), and two sets of season tickets (twenty tickets) for the 1999 Cleveland Browns football games. Cascade filed objections and requested a hearing on the three garnishments. (Cascade later withdrew its objections to the third writ for a bank attachment of judgment-debtor's bank accounts. The hearing proceeded on the objections to the attachment of the PSLs and football tickets.)

2. During the garnishment hearing on August 30, 1999, the judgment-debtor's attorney presented a third-party claim to ownership of the PSLs and tickets on behalf of Cascade Distributions, Inc. No objections were made to the manner in which the claim was presented.

3. At the hearing on September 13, 1999, the parties entered into an agreement for the distribution of the twenty Browns football tickets between Marinik and The Cascade Group, Inc. The parties further agreed that the amount of the judgment owed by The Cascade Group would be reduced by $1,100 pursuant to the agreement. The parties also stipulated that the two PSLs were the property of the judgment-debtor and were properly attached and were to be transferred to the judgment-creditor at the first opportunity to do so. The parties dispute the value of the PSLs and consequently the amount to be set off against the judgment against The Cascade Group.

*FINDINGS OF FACT*

1. Based on the stipulations of the parties and the documents admitted into evidence, the court finds that Cascade and Cascade Distributions, Inc. purchased two PSLs and twenty season tickets at a cost of $5,300, which Marinik has attached. There is no dispute as to the consideration paid for the tickets and the PSLs. Cascade contributed $3,100 for the purchase. Cascade Distribution, Inc. contributed the remaining $2,200. The evidence further establishes that Cascade and Cascade Distributions, Inc. are Delaware corporations and Cascade Distributions, Inc. is a subsidiary of Cascade.

2. The parties stipulated that Cascade is the owner of the two PSLs and $1,100 worth of the attached Browns tickets. Cascade Distributions, Inc. is the owner of $2,200 worth of the tickets. Each set of the Browns season tickets includes tickets for two pre-season games and eight regular games. Marinik has been in possession of the 1999 pre-season tickets and attended both pre-season games.

3. The PSLs were purchased by Cascade from the Cleveland Stadium Builders Fund, Inc. for $1,000 each. The PSLs grant to the purchasee permanent seat licenses to purchase annual season tickets each Browns season. The license is renewable by the purchasee subject to the terms and conditions of the "Cleveland Stadium Permanent Seat License (PL) Agreement." The PLSs were sold in 1998 and 1999 as a method of financing the construction of the new Cleveland Stadium by the city of Cleveland. Under the terms of the agreement, the future owner of the Cleveland Browns NFL team promised to assume the contractual rights of the Cleveland Stadium Builders Fund, Inc. with regard to the licenses.

4. The PLS purchased by Cascade in the initial offering are subject to a restriction on transferability and may not be transferred prior to May 1, 2000. After May 1, 2000, the "Licensee has the right to transfer the PLS by gift, bequest or otherwise at anytime." The right of transfer is subject to further terms and conditions which are not applicable in the instant case. A transfer cannot be completed until the transferee has assumed all obligations of the transferor and the transfer has been approved by and recorded on the books of the owner.

5. The parties presented various opinions as to the present value of the PSLs, and the value the PSLs will have after May 1, 2000, when the transferability restriction is terminated. Neither party presented testimony of expert witnesses or other evidence of valuation, beside the speculative values they each personally assigned to the PSLs. The NFL Cleveland Brown Club will, as a general policy, purchase a PSL from a licensee for the face value at which was issued, *i.e.*, $1,000.

## CONCLUSIONS OF LAW

1. Garnishment of personal property for the satisfaction of a judgment is a statutory remedy. R.C. 2716.11. The statute requires the judgment-creditor to provide a description of the property to be attached in the affidavit issued with a writ. R.C. 2716.11(C). The judgment-debtor may object to the attachment of the specific property and request a hearing. R.C. 2716.13(B). The hearing is limited to the consideration of the amount of property of the judgment-debtor in the hands of the garnishee that can be used to satisfy all or part of the debt owed by the judgment-debtor to the judgment-creditor. Only the judgment-debtor's property may be executed upon to satisfy a judgment against the judgment-debtor.

2. The parties have stipulated that Cascade is the owner of the two PSLs. Judgment will be entered accordingly. Of the remaining attached property (twenty Browns tickets), two-thirds of the tickets were purchased from the separate funds of, and for the individual benefit of, the third party, Cascade Distributions, Inc., and are therefore the separate property of Cascade Distributions, Inc. and cannot be subject to execution for the payment of Cascade's debts. The court notes that offers were made by the judgment-debtor to Marinik to pay Marinik for the tickets that had been attached. In the context in which the statements were made, the offer was more indicative of an attempt to settle the garnishment proceedings than of any expression or admission on the part of the judgment-debtor of ownership to the property. (See Evid.R. 408.) The remaining one-third of the tickets are owned by the judgment-debtor, by the judgment-debtor's own admission. Marinik and Cascade Distributions, Inc. agreed to a distribution of the twenty tickets.

3. As a general rule, personal property subject to a garnishment or attachment order is disposed of for the benefit of the judgment-creditor through sale, unless there are grounds for the discharge of the attachment. The net proceeds of the sale are used to satisfy the judgment. The stipulations of the parties obviate the need for the sale of the PSLs but have created a valuation problem. Lest there be any doubt, the court has adopted the position that a PSL constitutes personal property that is vested in the owner and that is alienable by the terms of the grantor's document that creates the right in the property owner. A PSL is not a mere license to purchase football tickets but rather is a valuable expectancy interest in renewable rights to season tickets that is a wholly separate and distinct interest from game tickets. Cf. *In re I.D. Craig Serv. Corp.* (Bankr.W.D.Pa.1992), 138 B.R. 490 (annual renewable right to purchase Pittsburgh Steelers NFL season tickets constitutes a property right); *In re Harrell* (C.A.9, 1996), 73 F.3d 218 (Phoenix Suns season tickets); and *In re Liebman* (Bankr.N.D.Ill.1997), 208 B.R. 38 (Chicago Bulls season tickets) (no property interest created in *revocable* right to renew seasons tickets).

4. The "fair market value" of an article of property may be defined, for the present purposes, as the "money consideration which a buyer would give and a seller would accept for property * * *, assuming that the buyer is willing to buy and the seller is willing to sell, that both are fully informed as to all facts material to the transaction and that neither is under any compulsion to act." Cleveland Municipal Code 625.03(d)(3). Cf. Cleveland Municipal Code 625.03(e)(6) (alternative valuation method for tickets of admission, *i.e.*, face value). The valuation for tickets is not appropriate under the circumstances, since a PSL is a separate property interest salable in a different market. A ticket may be subject to antiscalping legislation, Cleveland Municipal Code 698.06(c), while a PSL may be offered for sale freely in the open market, *In re I.D. Craig Serv. Corp.*, 138 B.R. at 500.

5. The present fair market value of a PSL must, like any article of property, be determined at the moment the property is attached. Attachment occurs when the order of garnishment of property, other than personal wages, is served upon the garnishee in possession of the property of the judgment-debtor. R.C. 2716.13(B). Service of the order perfects an execution lien in favor of the judgment-creditor on the proceeds of the sale of the attached judgment-debtor's property. 24 Ohio Jurisprudence 3d (1980), Creditors' Rights, Sections 496 and 497. The evidence establishes that at the time the PSLs were attached by Marinik, the PSLs could not be freely sold. The only potential buyer of the PSLs was, at the time of the attachment, the original issuer of the license, the Cleveland Browns. The Browns will pay the original contract price ($1,000) for a PSL. The court is neither in a position, nor would it be sound policy or law, to postpone the sale until the judgment-debtor could maximize its return on its investment in the PSLs by sale after May 1, 2000, or to await the possibility that the market will decline precipitously and diminish the value of the property subject to execution. Therefore, the court concludes that the present fair market value of the attached PSLs is $1,000 each and that the judgment debt owed by The Cascade Group should be reduced accordingly after the transfer of the PSLs to the judgment-creditor.

### RECOMMENDATION

Garnishments of personal property sustained in part. The amount owed by the judgment-debtor shall be reduced by $2,000 on account of the fair market value of the PSLs transferred to Marinik. One-third of the Browns season tickets are found to be owned by the judgment-debtor, The Cascade Group. The third-party claim of Cascade Distributions, Inc. is sustained in part. Two-thirds of the Browns season tickets are found to be the separate property of the third-party claimant, Cascade Distributions, Inc., and shall be physically delivered by the judgment-creditor to Cascade Distributions, Inc.'s counsel in accordance with the

**24**

terms of the settlement agreement entered into by the parties. All costs of the proceedings are taxed to the judgment-debtor, The Cascade Group.

*Recommendation accordingly.*