## RAYLE

v.

## BOWLING GREEN STATE UNIVERSITY.

Court of Claims of Ohio.

No. 98–10042.

Decided July 28, 2000.

---

*Scott T. Coon,* for plaintiff.

*Betty D. Montgomery,* Attorney General, and *Randall W. Knutti,* Assistant Attorney General, for defendant.

---

FRED J. SHOEMAKER, Judge.

Plaintiff, Max E. Rayle, brings this action based upon an alleged breach of contract (lease) by defendant. This case was tried to the court on the issues of liability and damages. Defendant denies liability.

This dispute arises out of a written contract executed by the parties on October 28, 1981, regarding the lease of two seats in the Stadium Club, an enclosed seating area located in defendant's football stadium. Plaintiff obtained the right to purchase two "chair seats" in defendant's Stadium Club upon initial payment of $1,000 per seat, then an annual payment for season tickets and a service charge for each seat. Plaintiff could retain the seats as long as the annual season ticket price and service charge were paid. Payment of the annual service charge entitled plaintiff to complimentary refreshments at the Stadium Club.

From 1981 to 1997, plaintiff annually paid for two tickets for reserved chair seats plus the annual service charge. Season ticket prices ranged from $32 to $75, and the service charges ranged from $50 to $75 per seat. It is undisputed that from 1981 through the 1997 football season, all service charges went toward the cost of refreshments, supplies, and salaries of students who worked as Stadium Club servers.

On October 17, 1997, defendant issued a letter to all Stadium Club members notifying them that the Stadium Club would soon be renovated, and that to accomplish the renovations, the service charge to the Stadium Club members would be increased. On March 25, 1998, defendant sent plaintiff a letter notifying him that the total cost per seat including the ticket and service charge would be increased to $1,000 per year for five years, and that plaintiff should notify defendant by May 15, 1998, whether he was interested in retaining his seats. Defendant's letter set forth a "Buy Back Option," which provided: "If this is unacceptable, we will buy back your seat for $1,000 and provide you with the opportunity to purchase seating elsewhere in Perry Stadium."

On April 21, 1998, plaintiff sent defendant a letter expressing his dissatisfaction with the increased service charge. On August 25, 1998, plaintiff received a check from defendant in the amount of $2,000, which was labeled as a refund for his two Stadium Club seats. On August 26, 1998, plaintiff sent defendant a letter stating that he did not solicit the refund, would not accept a unilateral offer from defendant, and did not consent to a new assessment of $5,000 per seat. Plaintiff did not cash the $2,000 refund check.

On September 14, 1998, defendant responded to plaintiff's letter. Defendant's letter stated that since plaintiff had not expressed an interest in maintaining his seats by remitting the service fee in a timely manner, the total amount of plaintiff's original investment ($2,000) had been returned to him and his seats had been reallocated.

Plaintiff alleges that the two seats he leased from defendant constitute "goods" as defined in R.C. 1301.02(A)(8), that he owns a property right in those goods, and that defendant defaulted on the lease contract when it increased the service fee in 1998. Plaintiff asserts that he is therefore entitled to damages pursuant to R.C. 1310.65. Defendant maintains that plaintiff breached the contract for the seats when he refused to pay the increased service fee.

■ Under the terms of the parties' agreement, plaintiff's right to retain his two seats is contingent upon his payment of the annual price of two season tickets and the service fees. Once plaintiff was notified that the service fee was going to increase markedly, plaintiff refused to pay the annual service fee for the 1998 football season. Therefore, the court finds that plaintiff's refusal to pay the service fee constitutes a breach of the contract.

■ The court does not agree with plaintiff's characterization of the seats as goods. Rather, the contract between the parties is a personal seat license. A "personal seat license" "constitutes personal property that is vested in the owner and that is alienable by the terms of the grantor's document that creates the right in the property owner." *Marinik v. The Cascade Group* (1999), 103 Ohio Misc.2d 18, 22, 724 N.E.2d 877, 880. "[It] is not a mere license to purchase football tickets but rather is a valuable expectancy interest in renewable rights to season tickets that is a wholly separate and distinct interest from game tickets." *Id.* The court finds that it is reasonable to value plaintiff's interest in the two seat licenses at the price he paid for them, a total of $2,000. Defendant was within its right to refund plaintiff's original $2,000 investment and reallocate his seats once plaintiff failed to pay the increased service charge by the due date.

■ The court acknowledges that the increase in the service fee was substantial, but the terms of the contract did not limit either the amount that would be charged as a service fee or the purpose of the service fee. In addition, the court finds that defendant is not liable for its decision to assess the cost of renovations of the Stadium Club against its members, inasmuch as it was a basic policy decision that was characterized by the exercise of a high degree of official discretion. See *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, paragraph one of the syllabus. The court finds that it is reasonable to assess the cost of renovations to those who would gain the most benefit from renovations.

Based upon the totality of the evidence, judgment is rendered in favor of defendant.

*Judgment for defendant.*

FRED J. SHOEMAKER, J., retired, of the Franklin County Court of Common Pleas, sitting by assignment.